Good morning. May it please the court. Robert Tortora was on a golf trip with a retired detective and a retired state court judge and he came home to one of the most humiliating experiences of his entire life culminating in a 49 hour per se unconstitutional detention between his arrest and his arraignment. The charges, of course, were tossed out before Presumptively, not per se, right? Well, it is presumptively under the law, however, there is nothing in the record that indicates extraordinary circumstances and that's what the government requires, setting aside who is responsible but in order for that to be a constitutional delay, there needs to be extraordinary circumstances. There aren't those here. You're not charging the government. You're charging Detective Danziger. And the concern I have is, given that that defendant submitted his paperwork at 8.53 24 hours afterwards, the question I have is, is he responsible for the arraignment not taking place for 48 hours or do we then have to be concerned that the ADA, possibly even the court, in not sitting after 2 o'clock is responsible? Help me out. I believe it's fair to say that under 1983 we follow ordinary tort principles and that means that causation means that you're going to be responsible for the reasonably foreseeable acts that you set in motion. And what we have here is a pattern of delay Is there not a limitation called personal involvement? That's correct. If I do everything that I need to do within a 24-hour period and then other people who are not defendants in this case fail to do or neglect to do whatever they need to do thereafter, why shouldn't we focus on the 24-hour period where I'm a defendant in which I was involved? Because that's ultimately an issue of fact. And there's two parts to this. One is, is whether or not What is the issue of fact here? Well, when you look On that frame When you look at the pattern of delay here, Mr. Tortor is arrested at 9.30. There's a brief interview. He is simply held until 4.30 in the afternoon. There's no indication that the detective did what ordinarily happens here, which is you talk to the district attorney. The way these cases get done within 20 hours on average is that the detectives work with the district attorney to make sure the papers get in on time and the complaint is ready so that morning it gets signed or if it's not signed the previous evening and then you go to the court. This is not a negligence or a grade the officer case. I mean, we have to basically conclude that a jury could find that judicial inquiry was delayed for delay's sake. Usually, as we say in Pabon, because you're trying to avoid an inquiry into probable cause that you know is deficient. And that doesn't seem to be evident here. Well, we have delay specifically for the purpose of doing additional investigation. They take him to do the controlled call at the DA's office. Didn't Mr. Tortor ask for the call? I'm sorry. Say that again. Didn't Mr. Tortor ask for the call? No. I believe that was set up by the officer thinking that this would be valuable because the officer was hoping to get Mr. Cerulli to make an admission. This is — But if Officer Danziger put in his paperwork, he was ready for the defendant to be arraigned within the permissible time. He wasn't looking to delay it at all. Well, I think that's a question for the jury. No, no. You have to point to some evidence that would allow them to reach that conclusion that he was then looking to delay it. I could see where you had the argument. If he put in his paperwork one minute before the court closed and he knew that. But that's not what happened here. The court wasn't closing until 2 o'clock, and he puts his paperwork in a little before 9 o'clock in the morning. The court closed at 1, according to the defendants, and — Well, I thought that — I mean, this is a matter in which we could probably take judicial notice. You're saying that the court closed at 1, but I'll give you that for purposes of the argument. The whole lengthy period that went on after that is the ADA. Actually, we don't know when the ADA had the paperwork ready. They're making an assumption What we do know is your client or the defendant had put it in, Mr. Danziger had put it in. That we know. We know he didn't sign it until after the judge was off the bench. That wasn't the reason for the delay, though. As you said, I mean, the judge was — went on the bench beforehand. I'm just trying to understand what you would argue would jury shows that Danziger was looking to delay it past 8.53 a.m.? I'm saying that Danziger understood how the process worked. And at every single stage, we have evidence of specific delays where he was in charge. We have the 9.30 to the 4.30. We have the delay until the lineup is performed. We then have him just going home rather than working with the district attorney to make sure the papers are ready. We have him showing up, putting in his papers 24 hours later when the benchmark is 24 hours, knowing that other steps have to happen. We know that the district attorney may have had the papers done much earlier. On the first day, the delay before the lineup. So the things that he does before he does the lineup is he lets Tortora call his friend, the retired detective who was allegedly with him on that trip, and he does the controlled call to Crulley, right?  No, he does the controlled call to talk to Vincent Cerulli, who was the soon-to-be ex-husband of the purported detective. But he does two things, right? So Tortora calls his friend, the retired detective, right? That's right. And then he also does the controlled call. Are those activities, were those inappropriate for him to do? Does that show that he was delaying on purpose? Well, Robert Tortora calling the detective, that was his action. However, yes, if Detective Danziger did the controlled call, rather than taking Mr. Tortora to arraignment, because he was looking to try to get Vincent Cerulli in on this crime, he was looking for an additional defendant under McLaughlin, that's illegal. That's unconstitutional. But didn't the district court say that that was an attempt to exonerate Mr. Tortora, because if Mr. Tortora said, Crulley asked me to get this property from the shed, and so the detective thinks, well, if I call him and it turns out he sent somebody else to get the property from the shed, that would just resolve this whole case right here. So isn't that an attempt to exonerate Tortora? That's a question of fact. There are two ways of looking at the evidence. I'm on a summary judgment standard, and the inferences flow in my favor. And I think that looking at that, that was an additional investigative step, because at this point, Danziger, and by the way ---- How would that add to probable cause to arrest Tortora to call to Cerulli? There was no probable cause to arrest Tortora. I mean, I understand. But the inappropriate thing would be if the detective was looking to beef up a probable cause finding that it didn't. So how would this call contribute to that? It may not even be to beef up the probable cause against Mr. Tortora, although that may have been one of Danziger's goals. He's also trying to get another defendant in. I'm not sure why that's not permissible under Riverside v. McLaughlin and U.S. v.  Because under ---- Legitimate investigation is permissible. It's delay for delay's sake to avoid a judicial inquiry. That's the constitutional problem. Actually, under McLaughlin, it says that if you are doing an investigation for the purpose of getting additional information either to provide probable cause for any arrest, then that's unlawful. Where does it say that it's ---- well, I'll let you in rebuttal point us out to where it says that it's impermissible even on other individuals. All right. I mean, this goes on all the time. You have a defendant make a phone call to the next person up in the chain. You're saying that that delay is unconstitutional? When ---- yes. I'm saying, but there ---- I think you're misreading McLaughlin, but you'll point me to where you think it says that. You've reserved two minutes for rebuttal. Thank you, Your Honor. Good morning. Mackenzie Phillip for Detective Danziger. There is no claim here for excessive delay against Detective Danziger because, as the Court has recognized, he was there at the courthouse within 24 hours ready to conduct the arraignment. Right. But your adversary says he knows that is Detective Danziger knows how the process works and should have realized that was not enough time. To get it done within the prescribed New York law period. So what's your response to that? Detective Danziger knew that most of these things happen pretty quickly, actually. And so when he was there before the courthouse even opened, he had absolutely no reason to think that this would not get done on Saturday. He was there literally before the courthouse opened. He sat around all day. There's really not much more he could do. He can't insist that the courthouse stay open. There's an absence of record evidence that he knew what ended up unfolding during the course of that day. That's exactly right. Therefore, there's an absence of evidence that he might be motivated by that subsequent series of events. That's exactly right. There's just no way he could possibly have foreseen any of this, and that's what this Court looked at in Walker. It said that there was, I think, also perhaps about a 49-hour delay caused by a trip to a hospital. And the Court said there's no way that the officer could have foreseen that. What about the delay the day before, as you were just saying? So why wasn't it inappropriate for him to investigate Kourouli before taking Mr. Tortora for arraignment? Well, he wasn't investigating Kourouli. He was trying to confirm the plaintiff's alibi, which the plaintiff knowingly gave to the detective. When the detective was interviewing the plaintiff, it's the plaintiff who brought up Mr. Kourouli. Danziger didn't ask anything about him. The plaintiff brought up Kourouli and said, actually, Kourouli asked me to take those things from the shed. And then when the detective said, well, let's call him and see, maybe you can get him to admit that and that would exonerate you, the plaintiff said, okay. And so they conduct this call, but instead of exonerating the plaintiff, Kourouli says, I don't know what you're talking about, only further adding to the probable cause against the plaintiff. And by this point, the courthouse was closed for the day. Again, this officer does not control the courthouse hours. So then the officer goes home very early in the morning, 30 minutes before the courthouse is even open. He's there waiting. He has his paperwork. He gives it to the DA. They're all waiting around all day. There's absolutely no explanation for what happened here, for why this delay happened, except that it wasn't the detective's fault. And we're certainly not saying that a 49-hour delay is great. As the plaintiff notes, it's presumptively unconstitutional. But the plaintiff is still obligated to show that the defendant he's suing was personally responsible in some way under 1983. For this detective to be personally liable to the plaintiff, there's just no evidence that he did anything wrong. Just to a different issue, what about the initial arrest? So the officer goes to the house. The babysitter had said, I saw somebody who looked like Santa Claus. The mother came up with one picture with one guy who's a friend of her soon-to-be ex-husband that she wants to identify. And then on that basis, the officer arrests him. Is that an unduly suggestive identification? Not at all. The Supreme Court has said that to be suggestive, there has to be some sort of police involvement in the wrongful identification procedure. And Mrs. Carulli was retired, was a civilian. Officer Danziger played no role in that. He gets to the scene. He's told that this identification procedure has already been done. There's really nothing. He can't undo it. But what he does is he asks the witness, did you get a good look at his face? She says yes. Are you sure it's him? She says yes. He goes and canvasses the neighborhood. They say they didn't see anything. He looks for video cameras. He does for prints. Invisibility, not probable cause in light of Stansberry and Mara and cases such as that. That's exactly right. So he's done all of this investigation. The only thing he has for sure is a witness who emphatically says, that's the guy I saw in the backyard. That's probable cause or at least arguable probable cause. And then the probable cause is only increased once he gets to the ‑‑ does the arrest and the plaintiff admits that he knows these people, that he, in fact, was asked by the plaintiff's husband or by the victim's husband to go take these things from the shed. And then ‑‑ He drives the car, right? He drives a truck, which there was a truck. And the plaintiff gives an alibi. The detective called the hotel and asked them, did this guy stay there on this night? And they said they couldn't confirm it. And while he presents to a couple of witnesses who said they didn't answer the phone that day and talk to a detective, there's just nothing in the record. The initial investigation he's doing is trying to exonerate Totora, but the opposing counsel says that's an inference, and so you could also understand it as an attempt at delay or to get additional information for a probable cause or to get other defendants. Do you think that that is not a permissible inference? There's no reasonable view of this record that shows that the detective was trying to delay for delay's sake. He already had all the probable cause he needed. He wasn't trying to delay a judicial determination. And that's further evidenced by the fact that he went very early the next morning and was waiting around. He goes right into the courthouse the next morning, right? Yes, first thing. Sat around waiting all day for the DA to draw up the complaint. There's really not much more that the detective could have done. Anything further? No, thank you. Thank you. We'll hear rebuttal. I think it's important to note that Detective Danziger admitted to Detective Keene, I know he didn't do it. All right? That is an admission that there was no probable cause. Where is that? Where is that? That is the full statement is contained in an affidavit that was signed by Detective Keene. Where in the appendix? It is right towards the end. I'm sorry. Where is it? It is JA 491 and 492. And specifically on 492, I asked Officer Danziger if he knew Robert didn't commit the crime. And Officer Danziger told me, I know he didn't do it, but there's nothing I can do. That's a really significant admission. And it's very difficult to flex all of the inferences in the defense's favor the way they're asking in light of that. But probable cause is assessed objectively, not subjectively. So we do know he's not present when this all happens. So to the extent he knows the fellow didn't do it, you're not pointing to anything other than his subjective belief giving you the benefit of this, there is no dispute that the witness ID'd him. And I'm not sure how that isn't objectively probable cause. One point I want to make about police involvement, by the way, that's a due process question. Answer my question first. So given that there is an eyewitness ID, how does his subjective belief diminish the fact that there's objectively probable cause? Well, because he's required to do essentially basic police work to look into whether or not that was a reliable identification procedure. Single photo identifications are strongly, strongly disfavored. And that's when it's done by the police, not by a civilian who then provides it to the police. They may be disfavored, but how does that vitiate probable cause or arguable probable cause under our case law? What it means is that he didn't think the ID was reliable. That's the inference from this confession is that he was there, he looks at all of the information that was available to him, and he says, I don't think he did it, which is another way of saying this identification procedure, I'm not buying it. She was shown two separate photographs by a civilian who, had he done some basic questioning, would have found out perhaps has a dogma. This allegation that he said, I know he didn't do it, but there's no way he could do that, he allegedly said after he had already taken Tortora to the courthouse, right? This is a discussion between Keene and Danziger at the courthouse. Right. And that's even more significant because it's after the lineup procedure, and what it appears happened was that through being shown photographs, Mr. Lucia learned what Mr. Tortora looked like and then was able to identify him. And after all of that — Those are all arguments that go to admissibility. I mean, you have to deal with our precedent in Stansbury and Mara. And I think that actually goes to my favor, because what it says in Stansbury is they — the single photograph, they look at it and they — and this Court said that was not enough for probable cause. No. No. Mara explained that what the distinction Stansbury draws is between circumstances that make it more likely that you'll make an identification, which may warrant suppression but does not — does not vitiate probable cause, and circumstances that leave you with no choice but to make the identification, usually compulsion of some kind. That is what — what will not permit probable cause. You don't have that here. I don't believe that was the case in Stansbury. Well, I think people — how do you deal with Mara's discussion of that, an explanation that that's exactly what Stansbury is talking about? Well, the way I deal with it is the fact that they specifically said — this Court specifically said in Stansbury that the single photograph identification going through the factors that the Supreme Court had laid out was simply too unreliable to create probable cause. But in those circumstances, the procedures forced the ID. Procedures that increase the odds of the ID do not preclude reliance. That is — Stansbury says that, too. These are procedures that force the ID because this is a retired detective. She knows full well what the proper procedure is. But instead, she does this improvised two — two single photographs of the same person, which is highly suggestive. This wasn't something by — this wasn't a choice by the investigating detective. This was compelled by an employer and an employee, and Detective Danziger didn't further investigate that. He didn't question that. And it was too suggestive to provide probable cause on its own. And, yes, maybe — And you have — you have the cite to McLaughlin for me on the page that you think supports the argument you made? Yes, I do. I think it's page 56. And it's true that McLaughlin doesn't talk to investigation of other individuals, but I still think the inference here is that this was to get additional information to justify the arrest of Mr. Tortora. And I think the inference here is that this single — It's part of the page that I thought would be part of the opinion that you think supports you. I have one question. So when he says, I know he didn't do it, but there's nothing I can do, when he says there's nothing I can do, what's he talking about? Why isn't there anything he can do? Because the — because it seems that Mr. Rooley spoke to a supervisor and he was getting pressure from the top. That's what I think that means. And I think that's a reasonable inference under the circumstances. This is a strange arrest. We have a well-liked former supervising detective calling her old precinct and then essentially accepting everything she says at face value. And by the way, what we now know is it wasn't Mr. Tortora and also there was no crime. Those — that boat motor belonged to Mr. Cerulli. And yes, you could say, well, the officer didn't know that at the time, but I think that's a problem. There was nothing compelling this officer to just arrest Mr. Tortora, hold him in, and then do the rest of the investigation. Because if he had brought that single photo to a district attorney, the case would have been tossed immediately. Thank you very much. We'll reserve the decision. Thank you, Your Honors.